IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WEST AMERICAN INSURANCE COMPANY,    )
an Ohio Corporation,                )
                                    )
            Plaintiff,              )       Civil No. 07-1447-AA
                                    )          OPINION AND ORDER
        vs.                         )
                                    )
JUSTIN L. HERNANDEZ and DANIELA A. )
HERNANDEZ, and CHASE HOME FINANCE,  )
LLC, a New Jersey Corporation,      )
                                    )
            Defendants.             )
_____ )

Daniel E. Thenell
Kyle A. Sturm
Smith Freed & Eberhard, P.C.
111 SW Fifth Avenue, Suite 4300
Portland, Oregon 97204
    Attorneys for plaintiff

R. Scott Taylor
627 Country Club Road
Eugene, Oregon 97401
    Attorney for defendants Justin and Daniela Hernandez

Bryant D. Tchida, <u>Pro Hac Vice</u>
Leonard, Street & Deinard
150 South Fifth Street
Minneapolis, Minnesota 55402

David W. Axelrod
Anna M. Smith
Schwabe, Williamson & Wyatt, P.C.
1500 - 2000 Pacwest Center
1211 SW Fifth Avenue
Portland, Oregon 97204
    Attorneys for defendants Chase Home Finance, LLC

Page 1 - OPINION AND ORDER

AIKEN, Judge:

On September 27, 2007, plaintiff West American Insurance Company filed a complaint seeking a declaration of its rights under a Homeowner's Insurance Policy ("the policy") it issued to defendant Justin Hernandez ("J. Hernandez").  Defendant Chase Home Finance, LLC, ("Chase") was a covered mortgagee under the policy.  Plaintiff contends that under the terms of the policy it is required to compensate neither Chase nor J. Hernandez and his wife, defendant Daniela Hernandez ("D. Hernandez"), (collectively, "the Hernandezes") for losses incurred in a January 2007 arson fire to the insured property.  All parties filed cross motions for summary judgment.  For the reasons explained below, the Hernandezes' motion for summary judgment is granted in part, as to plaintiff's First Claim for Declaratory Relief.  All other motions for summary judgment are denied.

<u>BACKGROUND</u>

The undisputed facts are as follows: in December 2004, J. Hernandez and Pamela Saepharn ("Saepharn") purchased a house ("the property") in North Bend, Oregon.  At the time, they were engaged to be married.  Chase made a mortgage loan to J. Hernandez, secured by the property.  While the loan was made to J. Hernandez only, paperwork accompanying the loan documents showed Saepharn as a co-owner of the property.

In April 2005, plaintiff issued the policy in question to J.

Page 2 - OPINION AND ORDER

Hernandez and Saepharn.  The policy was purchased through plaintiff's agent, Juul Insurance Agency, Inc. ("Juul").  Chase is named as the first mortgagee on the applicable declaration page of the policy.

Sometime in the summer of 2005, J. Hernandez and Saepharn broke off their engagement.  On October 11, 2005, Saepharn called Juul and informed them she had moved to California.  Saepharn and the Juul agent discussed the fact that Saepharn's engagement ring would stay in the possession of J. Hernandez at the property. Saephern says she made the call because she wanted to be removed from the policy.  After reviewing notes taken during the Juul agent's phone call with Saepharn, Juul agrees Saepharn's name should have been taken off the policy after the October phone call.  Saepharn was not, however, removed from the policy at that time.

In January 2006, J. Hernandez married D. Hernandez.  In or about April 2006, Saepharn transferred her title and rights to the property via warranty deed.  Simultaneously with the warranty deed transfer, J. Hernandez executed a new deed of trust provided by Chase which identified him as the sole owner of the house.  At some time in 2006, the Hernandezes moved to Portland.  They informed Juul of their change of address on December 20, 2006.

A fire partially destroyed the property on January 2, 2007. The fire was determined to be an arson fire with multiple points

of origin.  On or about April 19, 2007, J. Hernandez submitted a proof of loss to plaintiff for the damage caused by the fire.  On or about September 26, 2007, plaintiff denied coverage to the Hernandezes, claiming the fire loss was excluded from coverage.

The policy insured the property against loss, with certain exclusions.  Three particular provision of the policy are at issue in this case.[1]  First, the Vandalism/Vacancy Provision excludes from coverage losses caused by vandalism or malicious mischief where the property was vacant for 60 days prior to the loss.  Second, the Intentional Loss Provision excludes from coverage losses intentionally caused by the insured.  Third, the Mortgagee Clause defines the mortgagee's rights under contract, stating that while the policy normally requires the insurer to compensate the mortgagee even when coverage has been denied to the homeowner, that duty is subject to the mortgagee's compliance with certain requirements, including the requirement to notify the insurer of any change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

Plaintiff filed this suit seeking a declaration that (1) it is not obligated to compensate the Hernandezes because the Vandalism/Vacancy Provision excluded the loss from coverage (First Claim for Relief); (2) it is not obligated to compensate

------

[1] The provisions summarized here are quoted in full in the relevant Discussion sections of this opinion.

the Hernandezes under the policy because they set or conspired to
set the fire (Second Claim for Relief); and (3) it is not
obligated to compensate Chase under the policy because Chase
failed to inform it of a change in ownership of which Chase was
aware (Third Claim for Relief).

STANDARDS

Summary judgment is appropriate "if the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  Substantive law on an issue determines
the materiality of a fact.  T.W. Elec. Serv., Inc. v. Pac. Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determines the authenticity of a
dispute.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary

judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Elec.</u>, 809 F.2d at 630.

DISCUSSION

<u>I. First and Second Claims for Relief: The Hernandezes' and Plaintiff's Cross-Motions for Summary Judgment</u>

Plaintiff denied the Hernandezes' claims on two alternative grounds. First, plaintiff contends it is not obligated to pay under the policy because the arson fire was a form of vandalism or malicious mischief caused while the house was vacant. Under the Vandalism/Vacancy Provision of the contract,

2. We do not insure . . . for loss: . . .

c. Caused by: . . .

(4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant[.]

Pl.'s Ex. K p.5. In addition, plaintiff argues that an even broader exclusion, denying coverage if the house has been merely unoccupied, rather than vacant, for 60 days, must be read into the contract pursuant to the Oregon Insurance Code ("the Insurance Code").

Second, plaintiff contends it is not obligated to pay

because the Hernandezes set or conspired to set the fire.  Under

the Intentional Loss Provision of the contract,

> A. We do not insure for loss caused directly or indirectly
> by . . .___

> 8. Intentional Loss
> Intentional Loss means any loss arising out of any act an
> "insured" commits or conspires to commit with the intent to
> cause a loss[.]

Pl.'s Ex. K, p.9.

For the reasons stated below, I conclude that summary

judgment is inappropriate as to the applicability of the

Intentional Loss Provision, but that summary judgment should be

granted to the Hernandezes regarding the Vandalism/Vacancy

Provision.

A. First Claim for Relief: Vandalism/Vacancy Exclusion

Plaintiff argues that it is entitled to deny coverage to the

Hernandezes because the fire happened under conditions which

exclude the loss from coverage under the Insurance Code and the

terms of the contract.  Plaintiff contends that Oregon law

requires this court to read into the contract the uniform

exclusion from the Insurance Code, which is a broader coverage

exclusion than the Vacancy/Vandalism provision and is more

favorable to plaintiff.  The Hernandezes argue that the Insurance

Code permits substitution of provisions which are more favorable

to the insured, and that plaintiff did just that in this case.

Further, the Hernandezes argue that the Vandalism/Vacancy

Page 7 - OPINION AND ORDER

Provision contained in the contract does not apply because (1)
arson is not a type of vandalism or malicious mischief, (2) the
house was not vacant for sixty days before the fire, and (3) the
house was undergoing continuous remodeling and so was "under
construction" within the meaning of the provision.  Finally, the
Hernandezes argue plaintiff was aware they were not living in the
house, and that its continued acceptance of their insurance
premiums constituted waiver of the exclusionary provision.

     I conclude that the Vandalism/Vacancy Provision is an
adequate substitute for the uniform exclusion in the Insurance
Code.  Further, I find that the property was not vacant as a
matter of law, and that the Vandalism/Vacancy Provision therefore
does not exclude the loss from coverage.  I therefore grant the
Hernandez's motion for summary judgment on the First Claim for
Relief, regarding the Vandalism/Vacancy Provision.  Because the
house was not vacant, it is unnecessary to address the arguments
regarding whether arson is a form of vandalism, whether the house
was under construction, and whether plaintiff waived its right to
enforce the exclusion.

1. Applicability of the Insurance Code Uniform Provision

_____Plaintiff argues that the insurance policy must be read to
include a uniform insurance provision, Oregon Revised Statute §
742.216, which provides a broad exclusion for damage which occurs
when the property has been vacant or unoccupied for more than 60

days.  The Hernandezes argue that, under the Insurance Code, the
Vandalism/Vacancy Provision in the Homeowners Policy is an
acceptable replacement for the uniform provision and so the
uniform provision should not be read into the contract.  I find
that the Vandalism/Vacancy Provision is an adequate substitute
under Oregon law and that the statutory provision should
therefore not be read into the policy.

The Insurance Code exists for the protection of the
insurance-buying public and should be liberally construed in
pursuit of that goal.  Or. Rev. Stat. §§ 731.008, 731.016.  The
Insurance Code grants courts the authority to add statutorily
mandated provisions to an insurance policy where the policy is
binding on the insurer, but is not in compliance with the
insurance code.  Or. Rev. Stat. § 742.038.  Insurance companies
also have the option under the Code to substitute for one or more
of the Insurance Code provisions corresponding provisions that
are (1) approved by the Director of the Department of Consumer
and Business Services and (2) not less favorable in any respect
to the insured.  Or. Rev. Stat. § 742.021.

The Insurance Code provides a broad exclusionary provision,
which all fire insurance policies must contain unless a different
provision is substituted:

> A fire insurance policy shall contain a provision as
> follows: Unless otherwise provided in writing added hereto
> this company shall not be liable for loss occurring: . . .

> (2) While a described building, whether intended for occupancy by owner or tenant, is vacated or unoccupied beyond a period of 60 consecutive days.

Or. Rev. Stat. § 742.216 (internal quotation marks omitted).

The Hernandezes present a letter from the Department of Consumer and Business services confirming that the exclusion provision in the contract is approved for use in Oregon.[2]  In addition, the provision in the policy is more favorable than the Insurance Code uniform provision in three ways: first, the excluded losses are limited to losses due to vandalism and malicious mischief; second, the exclusion applies only when the property has been vacant, as opposed to merely unoccupied, for sixty days; and third, a property is presumptively not vacant when it is under construction.  Therefore, since the provision in question is not less favorable in any way to the insured and was approved for use by the Director, the only question is whether the parties intended it to substitute for the uniform provision.

Plaintiff relies on Farmers Insurance Co. v. St. Paul Fire & Marine Insurance Co. in arguing that Oregon law requires

_____

[2] Plaintiff relies on Utah Home Fire Insurance Co. v. Colonial Insurance Co. in arguing that the approval of the Director is not tantamount to a finding that the language in question complies with the Insurance Code.  300 Or. 564, 573 n.6, 715 P.2d 1112, 1118 (1986).  However, the Hernandezes do not assert that the Director's approval, with nothing more, makes the substitution permissible.  The Director's approval is a statutory requirement, without which substitution of a provision is not allowed, and the letter of approval demonstrates that particular requirement has been met.

provisions in contracts be read to "mean the same thing as" the relevant portions of the Insurance Code.  86 Or. App. 367, 370, 739 P.2d 605, 606 (Or. App. 1987).  In <u>Farmers</u>, the Insurance Code uniform provision at issue read: "If both this and other insurance apply to the same loss, we shall pay our share. Our share will be the amount that this insurance bears to the total limit of all insurance applying to the loss, collectible or not." <u>Id.</u> at 369-70.  The parallel provision in the contract stated: "If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss." <u>Id.</u> at 370.  Given the similarity in wording, I find the court's holding that the provisions should be read to mean the same thing is inapplicable to the facts in this case, where there are clear, material differences between the provisions.  Further, holding that all contractual provisions must be read to mean the same thing as the parallel section of the Insurance Code would deprive § 742.021, which clearly contemplates substitution of materially different provisions, of any meaning.[3]

---

[3] Plaintiff argues that Or. Rev. Stat. § 742.202 trumps § 742.021 because it requires all fire insurance policies to contain "the provisions set forth in ORS 742.206 to 742.242." However, § 742.202 itself contains a reference to § 742.204, which allows departure from the command of § 742.202 if the policy is approved by the Director and "[a]ffords coverage with respect to the peril of fire, <u>not less than</u> the substantial

Plaintiff next argues that the exclusion provision in the contract is not intended to replace the Insurance Code exclusion, but rather provides an additional protection for the insured when the house is under construction.  I find this explanation unpersuasive.  First, the Vandalism/Vacancy Provision is located in the policy section detailing exclusions from coverage.  If plaintiff had intended the Vandalism/Vacancy Provision to augment, rather than replace, the Insurance Code provision, it could easily have included the Insurance Code provision in the section.  Second, if the intent of the provision truly was to "protect" the insured while their house was under construction, a short, straightforward statement that a house is neither "vacant" nor "unoccupied" when it is under construction would have accomplished that goal.  It seems highly unlikely a provision designed <u>only</u> to provide an additional protection for the insured would be worded in this way or would be located in a long list of exclusions to coverage.

Finally, plaintiff contends that vacant/unoccupied provisions are special because they are for the benefit of the insurer, and that therefore § 742.216 should be read into the contract because the Insurance Code provision is more beneficial

equivalent of the coverage afforded by the provisions of the standard fire insurance policy as required by Or. Rev. Stat. § 742.202." (emphasis added).  This requirement mirrors the § 742.021 exception language, and so allows for substitution of provisions that are not less favorable to the insured.

to the insurer than the Vandalism/Vacancy Provision in the
contract.   Plaintiff relies on Ainslie v. First Interstate Bank
of Oregon, N. A. for the proposition that statutorily required
omitted terms must be read into a policy, regardless of which
party is benefitted.  148 Or. App. 162, 178 n.14, 939 P.2d 125,
134 (1997).  However, in Ainslie, the statute did not allow for
substitution or any exceptions.  Here, the Insurance Code
generally and the fire insurance provisions more specifically
allow for the substitution of alternative provisions so long as
they are not less beneficial to the insured and are approved by
the Director.  I find no authority to support plaintiff's
argument that in some cases a provision must be no less
beneficial to the insurer to constitute an adequate substitution
under the Insurance Code.  Here, both statutory requirements are
met, and I find the language of the provision clearly indicates
it is a substitute for the more expansive exclusion in the
Insurance Code.  The policy will not be read to include §
742.216.

2. Applicability of the Vandalism/Vacancy Exclusion

       By its terms, the Vandalism/Vacancy Provision only excludes
loss from coverage if (1) the damage is caused by vandalism or
malicious mischief; (2) when the house has been vacant for sixty
days or more; and (3) is not under construction.  Because I find
that the property was not vacant, I conclude the

Page 13 - OPINION AND ORDER

Vandalism/Vacancy provision does not apply.

The parties agree that the applicable rule comes from

Schoeneman v. Hartford Fire Ins. Co. of Hartford, Connecticut,

where the court concluded "vacant" means "contains substantially

nothing." 125 Or. 571, 574, 267 P. 815, 816 (1928). The court

elaborated:

> Vacant and unoccupied are not synonymous, though sometimes
> so used. Vacancy, correctly speaking, can only occur when
> the building is empty, contains substantially nothing; while
> occupancy, when speaking of residences, refers more
> particularly to human habitation, the pedis possessio or
> actual living in the dwelling. Th[is] . . . illustrates the
> difference between vacant and unoccupied: [t]he distinction
> . . . is perhaps more clearly marked in the case of a
> dwelling house from which the family has removed, leaving a
> portion of their household goods in the building. It will
> not be vacant, but occupation is at an end when it is no
> longer the place of abode of any living person.

Id. (internal citations omitted). The Oregon Court of Appeals

recently reiterated the rule of Schoeneman as the governing

definition of vacant and unoccupied. Schmidt v. Underwriters at

Lloyds of London, 191 Or. App. 340, 345, 82 P.3d 649, 652 (Or.

App. 2004).

While the parties agree that Schoeneman provides the rule,

they disagree on its application. The Hernandezes argue that

"substantially nothing" means that if the house contains any

household goods, it is not vacant. Plaintiff instead focuses on

the word "substantially," contending that it implies a more

permissive test, and citing to a series of federal courts of

appeals decisions focusing on whether the property contains

Page 14 - OPINION AND ORDER

articles necessary for the property's intended use.

In Vennemann v. Badger Mutual Insurance Co., the Eighth
Circuit Court of Appeals considered the definition of vacancy
within the context of an exclusion provision.  334 F.3d 772, 773
(8th Cir. 2003).  The court analyzed the approaches of other
circuits and rejected the "devoid of contents" test in favor of
an approach focusing on whether the house contained "the presence
or absence of objects or activities customary for the property's
intended use."  Id.; see also Langill v. Vt. Mut. Ins. Co., 268
F.3d 46, 48 (1st Cir. 2001) (rental property vacant where sparse
furnishings and random evening visits by appellant did not
"convey the appearance of residential living"); Catalina
Enterprises, Inc. v. Hartford Fire Ins. Co., 67 F.3d 63, 66 (4th
Cir. 1995) (warehouse was vacant where the objects left on the
premises did not indicate that the building was occupied); Am.
Mut. Fire Ins. Co. v. Durrence, 872 F.2d 378, 379 (11th Cir.
1989) (house was vacant because it "lacked amenities minimally
necessary for human habitation.")

By contrast, in Myers v. Merrimack Mutual Fire Insurance
Co., the Seventh Circuit Court of Appeals stated that vacant
means "entirely empty" and "devoid of animate or inanimate
objects" under Illinois law.  788 F.2d 468, 471 (7th Cir. 1986).
Similarly, in Jelin v. Home Insurance Co., the Third Circuit
Court of Appeals concluded that in an insurance contract, vacant

means "empty and void," and that a house with inanimate objects in it is not vacant.  72 F.2d 326, 326 (3d. Cir. 1934).

Plaintiff argues the approach of the First, Fourth, Eighth, and Eleventh Circuits is consistent with the Oregon rule.  The Hernandezes contend the Seventh and Third Circuits were applying the Oregon rule.  I disagree with both parties, and find the Oregon vacancy rule under Schoeneman strikes a middle ground. Venneman and other similar cases apply what amounts to an occupancy-based standard to determine whether a property is vacant.  Under Schoeneman, this cannot be the test, as the court in that case made clear that a dwelling may not be vacant where it is no longer the abode of a living person but a portion of household goods remains.  However, the "entirely empty" rule in Myers and Jelin is a stricter one than the rule identified by the Schoeneman court.  The use of the word "substantially" implies that total emptiness is not required for a finding that a property is legally vacant.

Dictionaries define "substantially" to mean "about" and "being largely but not wholly the specified thing."  Black's Law Dictionary 1428-29 (6th ed.1990); Webster's Ninth New Collegiate Dictionary 1176 (1986).  Courts have defined "substantially" as having a meaning consistent with "the same or very close."  See Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1366 (Fed. Cir. 2001); Lonestar Inventions LP v. Nintendo of America, Inc., 2009

WL 1011734, at *6 (E.D. Tex. Apr. 14, 2009). Therefore, a property is vacant under Oregon law when it is contains nothing or very close to nothing.

Applying this legal rule to the facts as presented, I find the property in this case was not vacant. While there may be a factual scenario in which the question of whether a dwelling contained very close to nothing would be an issue of triable fact, here I find the contents of the house mandate a legal conclusion. The Hernandezes presented claims in their proof of loss for approximately $15,000. An inventory of items in the house, photos taken after the fire, and deposition testimony support the Hernandezes' contention that the house, while not fully furnished, contained furniture, appliances, and personal items. Because I find the evidence shows the Hernandezes had items in the house, I conclude the property did not contain "substantially nothing" under Oregon law and that it was therefore not vacant. By its terms, then, the Vandalism/Vacancy exclusion does not apply.

B. Second Claim for Relief: Intentional Loss Exclusion

The policy expressly excludes from coverage all losses "arising out of an act an insured commits or conspires to commit with the intent to cause a loss." Under this provision, if the Hernandezes set or conspired to set the fire at their home they are not entitled to recover under the policy. I find that there

remains a question of triable fact regarding whether the
Hernandezes were involved with the arson.

Plaintiff's theory is that J. Hernandez conspired with a
friend to set the fire.  In support of this theory, plaintiff
presents the following evidence: (1) deposition testimony
indicating that J. Hernandez knew how and where the fire was
started before that information was available to the public; (2)
phone records showing that J. Hernandez's friend Clint Lundgren
("Lundgren"), who provides J. Hernandez's alibi on the day of the
fire, neither made nor received any calls on the day of the fire,
despite otherwise being constantly on the phone; (3) undisputed
statements of facts indicating that there was no forced entry to
the house and that the Hernandezes possess the only keys to the
house; (4) Lundgren's signature on a form he allegedly signed the
day of the fire does not match his signature on his affidavit,
suggesting someone else may have signed the form in order to
establish an alibi for Lundgren; and (5) financial statements
showing J. Hernandez was over $500,000 in debt.

While a reasonable factfinder could conclude, based on this
evidence, that J. Hernandez conspired with Lundgren to set the
fire while creating an alibi for himself, the Hernandezes present
the following evidence in contradiction: (1) deposition testimony
that J. Hernandez learned how and where the fire started from the
fire investigator; (2) deposition testimony that Lundgren was

drunk and at home with J. Hernandez the entire day of the fire;
(3) a supplemental investigation report finding the house may
have been left unlocked the day of the fire; (4) maps showing the
length of time it would take to travel from Lundgren's house to
the property and back; and (5) lack of evidence of any motive on
Lundgren's part.  Just as a reasonable factfinder could believe
plaintiff's theory of how the fire started, a reasonable
factfinder could also find the Hernandezes' exculpatory evidence
credible.

Given the conflicting evidence in the record, there remains
a genuine issue of material fact regarding J. Hernandez' role in
the arson.  It is inappropriate to resolve this matter on summary
judgment.

II. Third Claim for Relief: Chase's and West American's Cross-
Motions for Summary Judgment

Plaintiff seeks a declaration that, under the terms of the
policy's Mortgage Clause, it is not obligated to insure Chase
against losses incurred in the fire.  The Mortgage Clause reads:

K. Mortgage Clause . . .

2. If a mortgagee is named in this policy, any loss payable
. . . will be paid to the mortgagee and you, as interests
appear . . .

If we deny your claim, that denial will not apply to a valid
claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or
substantial change in risk of which the mortgagee is aware.

Chase's Ex. 1, p.7.

_____Chase argues (1) it had no obligation to notify plaintiff of
the change in ownership, because it was unaware of the change;
(2) any obligation to notify plaintiff of the change in ownership
was immaterial because plaintiff already knew about the change;
(3) Saepharn's deeding of her interest in the property to J.
Hernandez was not a "change in ownership" within the meaning of
the Mortgage Clause; and (4) because the change in ownership did
not increase the risk to plaintiff, Chase's failure to notify
plaintiff of the change should not excuse plaintiff's duty to
perform under the contract.  Plaintiff argues (1) it did not know
about the change in ownership; (2) Chase knew about the change in
ownership; (3) the plain text of the Clause required Chase to
notify it of any change in ownership, which Chase failed to do;
and (4) whether the change in ownership increased the risk to
plaintiff, to the extent it is relevant, is a question of fact,
not of law.

Because I find questions of material fact remain as to
Chase's knowledge of the change in ownership, plaintiff's
knowledge of the change in ownership, and whether the change in
ownership increased the risk under the policy, both Chase's and
plaintiff's motions for summary judgment on the Third Claim for
Relief are denied.

///

A. Chase's Knowledge

Because Chase's obligation to notify plaintiff of the change in ownership was only triggered under the contract if Chase was aware of the change, I address that issue first.  I find that based on the evidence in the record, there remains a genuine issue of triable fact as to whether Chase was aware of the change in ownership.

Whether Chase was "aware" of the change requires a determination of its actual perceptions at the time.  State of Oregon v. Curtiss, 193 Or. App. 348, 354-55, 89 P.3d 1262, 1264-65 (Or. Ct. App. 2004).  Chase contends it was never aware of the change in ownership because it did not have a contractual relationship with Saepharn, and so did not pay attention to the presence or absence of her name on the relevant documentation. Although Saepharn was an owner of the house, J. Hernandez was the only borrower obligated to repay loans pursuant to the notes issued by Chase.  Saepharn's name appears on the loan documentation, but Chase alleges it was added later, citing the fact that it is typed in a different front than the one Chase customarily uses.  While Chase has copies of the documents with Saepharn's name on file, Chase presents deposition testimony that their official auditing process provides for in-depth review of only 10-15% of the documents returned to Chase after closing.

Plaintiff relies on Collins v. Lumbermen's Insurance Co. of

Page 21 - OPINION AND ORDER

<u>Philadelphia, Pennsylvania</u> in arguing that Chase was aware of the change as a matter of law. 297 P. 748 (Wash. 1931). In <u>Collins</u>, the mortgagee claimed it had been aware of a change in ownership and thus was not obligated to inform the insurance company of said change under the terms of the contract. <u>Id.</u> at 12. However, at trial, the mortgagee's secretary testified he was in charge of "accounting and records," and testimony also showed that the new policies showing the change in ownership had been delivered to the secretary. <u>Id.</u> The court concluded the combination of the delivery to the secretary and the secretary's acknowledged responsibility amounted to awareness as a matter of law. <u>Id.</u> at 13.

Plaintiff presents evidence that (1) Chase possesses a copy of the warranty deed transferring Saepharn's interest in the property to J. Hernandez; (2) it is standard procedure for Chase to keep copies of loan and refinance documents; and (3) Chase possesses a copy of the Settlement Statement detailing a payment of $13,100.00 to J. Hernandez by Saepharn, contingent upon Saepharn's relinquishment of her interest in the property. I find that these facts do not rise to the level of evidence in <u>Collins</u> and are insufficient to find Chase was aware of the change in ownership as a matter of law. While a reasonable factfinder could conclude, based on plaintiff's evidence, that Chase was aware of the transfer as a matter of law, that same

factfinder could also be persuaded by Chase's assertion that, given its lack of a contractual relationship with Saepharn, it was unaware of the change.

B. "Change in Ownership"

Chase argues that even if it was aware of the transfer of property interests, the transfer from Saephern and to J. Hernandez was not a "change in ownership" within the meaning of the policy, and thus it had no duty to inform plaintiff of the change in order to preserve its rights under the contract. Plaintiff contends that the transfer was a "change in ownership" under the policy. I agree that under Oregon principles of contract interpretation, the transfer in this case was a "change in ownership" within the meaning of the contract's notification provision.

Oregon law governs with respect to the interpretation of the insurance policy. Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 209 (9th Cir. 1980). The "primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties." Totten v. N.Y. Life Ins. Co., 298 Or. 765, 770, 696 P.2d 1082, 1086 (1985). The Ninth Circuit recently held that the interpretation of insurance contracts is a question of law and identified Hoffman Construction Co. v. Fred S. James & Co., 313 Or. 464, 836 P.2d 703 (Or. 1992), as the proper analytical framework for construing insurance contracts. Alexander Mfg.,

Page 23 - OPINION AND ORDER

Inc. Employee Stock Ownership Plan & Trust v. Illinois Union Ins.
Co., 560 F.3d 984, 986-87 (9th Cir. 2009).  Courts must first
look to see if the contract itself defines the term in dispute.
Hoffman, 313 Or. at 470.  If it does not, the court must decide
if the term at issue has a plain, unambiguous meaning.  Id.  If
there is more than one plausible interpretation of the term, the
court must then examine the policy as a whole in an attempt to
ascertain whether both definitions remain plausible in light of
the broader context.  Id.  Once this full contextual examination
has been performed, any remaining ambiguity should be construed
against the drafter; however, the court does not take these
additional interpretive steps unless the term is susceptible to
more than one plausible interpretation.  Id.; Alexander, F.3d at
987.

    In Holloway v. Republic Indemnity Co. of America, the Oregon
Supreme Court applied the Hoffman framework to interpret an anti-
assignment clause in an insurance policy.  341 Or. 642, 649, 147
P.3d 329, 333 (Or. 2006).  In Holloway, the Oregon Court of
Appeals had determined that the use of "rights or duties" in the
anti-assignment clause was ambiguous because it did not specify
which rights or duties could not be assigned.  Id. at 651.  The
Court of Appeals then went on to apply the "majority rule"
interpretation accepted in other state courts.  Id.  The Oregon
Supreme Court reversed, finding that the inclusion of "your"

before "rights or duties" sufficiently defined which rights or
duties could not be assigned.  Id.  Because the clause was worded
broadly and contained no exceptions or qualifications, the phrase
carried only one plausible meaning: a prohibition against the
assignment of "whatever rights or duties the insured may have
under the policy."  Id.  Notwithstanding other courts'
recognition of an implicit exception in similarly worded
provisions, Oregon principles of contract construction precluded
the insertion of any such implicit exception because "[n]othing
in the clause suggest[ed] a limitation [or exception]."  Id.  The
court expressly rejected the Court of Appeals' reliance on other
states' courts, concluding those courts had not followed Oregon's
analytical approach to insurance contract construction, and thus
were unpersuasive.  Id. at 653.

     In the instant case, the question is whether Saepharn's
deeding of her interest in the property to J. Hernandez, making
him the sole owner of the property, constitutes a "change in
ownership" which then would trigger Chase's obligation to notify
plaintiff.  The contract does not provide a definition of "change
in ownership," and Chase and plaintiff agree that Oregon courts
have not addressed this question.  Plaintiff, however, contends
that the phrase "any change in ownership" is unambiguous and
contemplates no distinction between types of changes in
ownership.  Chase argues that the phrase "change in ownership"

Page 25 - OPINION AND ORDER

within the exclusion clause refers only to transfers of ownership to a third party stranger to the contractual relationship.

In Holloway, the court found "your rights or duties" to be susceptible to only one plausible interpretation.  341 Or. at 649.  Similarly, I find "any change in ownership" to be unambiguous.  The provision, like the one at issue in Holloway, is worded broadly and contains no exceptions or qualifications; it therefore refers to all changes in ownership.  Saepharn deeded her interest in the property to J. Hernandez, thus triggering Chase's obligation under the notice provision.  Chase's reliance on cases from other states does not change the analysis.  Chase is correct that Oregon courts have found the existence of conflicting judicial authorities may be evidence of ambiguity.  See, e.g., Cimmaron Ins. Co. v. Travelers Ins. Co., 355 P.2d 742, 746 (Or. 1960).  However, as in Holloway, we do not reach that step in the analysis because the plain meaning of the contract language speaks for itself.  See also Hoffman, 313 Or. at 475-77 (rejecting the use of cases from other jurisdictions as evidence of ambiguity where a phrase had only one plausible interpretation within the context of the contract as a whole).

C. Increased Risk

Chase argues that even if it was aware of the change in ownership and was obligated to notify plaintiff, it is improper for plaintiff to deny coverage because the change in ownership

Page 26 - OPINION AND ORDER

did not increase the risk under the Homeowners Policy.  In
support of this argument, Chase contends that the notice
provision of the exclusion clause is a covenant and not a
condition of recovery, and that if it was aware of the change in
ownership and was obligated to notify plaintiff, this is merely
an action for which damages may lie and does not excuse
plaintiff's duty to perform its obligations under the contract.
I conclude that if plaintiff was not prejudiced by Chase's
failure to inform it of the change in ownership, excusing
plaintiff from its duty to perform under the contract would be
improper.  However, such a determination requires findings of
fact and is not properly resolved on a motion for summary
judgment.

        A condition is "an event, not certain to occur, which must
occur, unless its non-occurrence is excused, before performance
under a contract becomes due."  Restatement (Second) of Contracts
§ 224 (1981); Dan Bunn, Inc. v. Brown, 285 Or. 131, 142-43, 590
P.2d 209 (1979).  While it used to be common in contract law to
speak of conditions precedent and conditions subsequent, the
trend in recent years is to abolish the concept of "condition
subsequent" and to ask whether the occurrence or non-occurrence
of the event in question discharges an existing duty.
Restatement (Second) of Contracts § 224, comment e (1981).
Because the law does not favor forfeiture, "a court will not

Page 27 - OPINION AND ORDER

imply that a covenant is a condition unless it clearly appears the parties so intended it." Standard Oil Co. of Cal. v. Perkins, 347 F.2d 379, 382 (9th Cir. 1965). Many courts require specific language discharging the duty in the case of non-occurrence of an event in order to consider the provision in question a condition, often in the form of a provision declaring failure to comply with the contract will have the effect of making the agreement null and void. See, e.g., Phoenix Mut. Life Ins. Co. v. Aetna Ins. Co., 59 S.W.2d 517, 518 (Tenn. 1933) (holding that generally notice provisions in mortgage clauses of insurance contracts are covenants, not conditions, but where the clause provides "in addition that the failure of the mortgagee to give notice will render the policy void," the clause is a condition "the breach of which will defeat recovery upon the policy").

Oregon courts have not addressed the covenant/condition question with respect to the notice provision of a standard loss clause in an insurance contract. However, in Lusch v. Aetna Casualty & Surety Co., the Oregon Supreme Court considered a notice of accident provision in a car insurance policy. 272 Or. 593, 594, 538 P.2d 902, 902 (1975). The policy stated: "In the event of an accident . . . written notice . . . shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable . . . [and n]o action shall lie against

Page 28 - OPINION AND ORDER

the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy." Id. at 595.  Reasoning that the purpose of a notice provision is to give the insurer "time . . . to adequately investigate the potential claim and thus protect itself and the insured," the court held the proper question in such a case was "whether the insurer is prejudiced by the failure of the insured to give notice as soon as practicable."  Id. at 597.

While Lusch concerned failure to notify an insurance company of a potential claim, I find its reasoning to be useful in determining whether Chase's failure to notify plaintiff of the change in address excused plaintiff's duty to perform under the contract.  As the contract does not contain a "null and void" or similar provision expressly stating that failure to comply with the notice provision would excuse plaintiff from its duty to perform under the contract, the question should be whether plaintiff was prejudiced by Chase's failure to comply with this particular contractual provision.  Proper analysis of this issue requires a determination of whether Saepharn's relinquishment of her interest in the property increased risk under the policy such that Chase's failure to inform plaintiff of the change deprived plaintiff of the opportunity to increase premiums or deny continued coverage.  Because the question of risk is a disputed

issue of fact, it cannot be resolved on summary judgment.[4]

D. West American's Knowledge

Chase argues that any duty it may have had to inform plaintiff of the change in ownership under the contract is immaterial because plaintiff already knew about the transfer. Plaintiff does not appear to dispute Chase's claim that it would have had no duty to inform if plaintiff was already aware of the change in ownership, but rather asserts it had no such knowledge. I find there is a genuine issue of triable fact regarding whether plaintiff knew about the change in ownership.

I first note that the question of whether plaintiff was aware of the change in ownership bears on the prejudice analysis outlined above. In Lusch, the court quoted Bailey v. Universal Underwriters Insurance for the proposition that "when the insurer had actual notice of the accident, including most of the circumstances of the accident, and undertook to investigate it,

---

[4] Chase argues there was no increase in risk as a matter of law. However, it cites no Oregon case law, and relies on cases from other jurisdictions which are distinguishable. For example, in First Federal Savings & Loan Ass'n v. Nichols, the court concluded a vacant property was higher risk than an occupied property as a matter of law. 306 N.Y.S.2d 542, 546 (N.Y. App. Div. 1970). Chase also relies on FBS Mortgage Corp. v. State Farm Fire Casualty Corp. for the proposition that notice requirements only apply to "the sort of change in occupancy that would preclude recovery by the named insureds." 833 F. Supp. 688, 692 (N.D. Ill. 1993). However, in FBS the court's statement had been agreed to by both parties as a correct statement of the law and so was not in dispute. Id. Neither case convinces me that the question of increased risk can be resolved at this stage.

the fact that such notice was not given by the named insured is
wholly immaterial."  272 Or. at 598 (quoting 258 Or. 201, 216,
474 P.2d 746, 754 (1971)).  Again, while notifying an auto
insurance company of a possible claim is not the same as
notifying a homeowners insurance company of a change in
ownership, the underlying reasoning applies.  It would be
difficult to conclude plaintiff was prejudiced by Chase's failure
to inform plaintiff of facts plaintiff already knew.

Chase presents evidence that on October 11, 2005, Saepharn
called Juul and requested her name be removed from the Homeowners
Policy.  The Juul agent's notes from the phone call suggest
Saepharn also informed the agent she would be moving to
California and that her engagement ring would remain in the
house.  Further, Chase asserts that when J. Hernandez changed his
address on the Juul website, plaintiff was notified that he had
married someone other than Saepharn and moved out of the
property.  Plaintiff responds that it was aware of a change in
occupancy, but not a change in ownership, pointing to the fact
that the change in ownership occurred six months after the
October 2005 conversation.  I find that based on the evidence in
the record, a reasonable factfinder could find support for either
Chase's or plaintiff's position.

## CONCLUSION

Defendants Hernandezes' motion for summary judgment (doc.

52) is granted in part (as to plaintiff's First Claim for Relief)

and denied in part (as to plaintiff's Second Claim for Relief).

Defendant Chase's motion for summary judgment (doc. 69) is

denied.  Plaintiff's motions for summary judgment (docs. 76 and

82) are denied.  Finally, the parties' request for oral argument

is denied as unnecessary.

IT IS SO ORDERED.

      Dated this __14__ day of October, 2009.




          _____/s/ Ann Aiken_____
              Ann Aiken
       United States District Judge